IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

BEMONT INVESTMENTS, LLC, §
by and through its Tax Matters Partner, et al., §
　§
　Plaintiffs, §
　§
v. § CASE NO. 4:07cv9
　§ (consolidated with 4:07cv10)
　§
UNITED STATES OF AMERICA, §
　§
　Defendant. §

**MEMORANDUM OPINION AND ORDER REGARDING
MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
INAPPLICABILITY OF VALUATION MISSTATEMENT PENALTY**

Before the Court is Plaintiffs' Motion for Partial Summary Judgment Regarding Inapplicability of Valuation Misstatement Penalty (Dkt. 137). The Court has considered the motion, as well as the response filed by the United States. The motion is GRANTED.

Plaintiffs, the partnerships herein, filed this suit contesting the determination by the Internal Revenue Service that the transactions which created partnership losses were sham transactions to create sham losses. The United States calls these tax shelters Son of Boss transactions.

The very narrow issue presented here is whether the United States can impose a penalty for valuation misstatements. The United States contends that the value of the currency swaps as reported results in a misstatement of over 8000%.

Section 6662 of the Internal Revenue Code allows an imposition of a penalty for underpayment of taxes when any one of the following factors is demonstrated: (1) negligence or disregard of rules or regulations; (2) any substantial understatement of income tax; (3) any substantial valuation misstatement under chapter 1; (4) any substantial overstatement of pension liabilities; or (5) any substantial estate or gift tax valuation understatement. 26 U.S.C. § 6662 (b)(1-5). Section 6662(h)(2) allows for a 40% penalty, if the substantial valuation misstatement is 400% or more. 26 U.S.C. § 6662(h)(2).

In October 2006, the I.R.S. sent both partnerships a Notice of Final Partnership Administrative Adjustment, or FPAA. Curiously, the notice states that, if the partnerships do nothing and do not enter into a binding settlement, they will be billed for any additional tax plus interest that they may owe under the FPAA. Nothing is said about penalties. However, the notice states that, if the partnerships accept the FPAA and sign the required form, then they are signing on for any additional penalties as determined by the I.R.S. This begs the question, why settle?

In the form 886-A, Explanation of Items, attached to the FPAA the I.R.S. notes a number of factors for its decision to disallow the transaction. First, the I.R.S. questions whether BPB Investments is a partnership as a matter of fact. Second, the I.R.S. states that the partnership was formed solely for the purposes of tax avoidance by artificially overstating basis in the partnership interests of its purported partners. Third, the transaction was noted by the I.R.S. as an economic sham with no business purpose. The I.R.S. makes the determination that the foreign currency swaps were acquired directly by the partners and not BPB Investments, LLC. The I.R.S. also concludes that

the swap assumed by BM Investments, LLC is disregarded and any gains or losses on the swap is treated as having been realized by the partners. The I.R.S. then determines that the partners of BPB Investments are not to be treated as partners. It is also determined by the I.R.S. that obligations under the short positions transferred to BM Investments LLC are liabilities which reduce the purported partners' bases in BM Investments, LLC in the amount of $202,5000,000. The I.R.S. determines that there was no profit motive with this transaction and that any losses were not at risk. The I.R.S. also determines that none of the partners of BM Investments, LLC or PBP Investments, LLC established an adjusted basis in their respective interests in an amount greater than zero (0). The I.R.S. also determines that the sale, liquidation, or exchange of the above noted partnerships failed to establish a basis above zero for the partners' partnership interest.

Plaintiffs contend that, under well settled Fifth Circuit law, the I.R.S.'s determination that the transaction was a sham — and thus disallowed — forecloses assessment of the 40% penalty. The United States responds that current Fifth Circuit law either (1) does not apply to this transaction because the transaction is distinguishable or has been superseded by changes in the law and Treasury Regulations, or (2) precedent binding decisions were incorrectly decided. The United States points out that, when considering these type of tax shelters, most of the Circuits have upheld the 40% penalty provision. The United States concedes that the case law in the Ninth Circuit and Fifth Circuit reaches a contrary result.

Therefore, the task before the Court is relatively simple. If Fifth Circuit law operates in Plaintiffs' favor, there is little else to do than grant the motion. This Court is bound by precedent,

not policy.

Plaintiffs contend that, under *Todd v. Comm'r,* 862 F.2d 540, 541-42 (5th Cir. 1988), *Heasley v. Comm'r,* 902 F.2d 380, 382-83 (5th Cir. 1990), and their progeny, these penalties are not applicable if the I.R.S.'s disallowance of tax benefits is not "attributable to" a valuation misstatement. *See Klamath Strategic Inv. Fund v. United States,* 472 F. Supp.2d 885, 899-900 (E.D.Tex. 2007) *aff'd in part,* 568 F.3d at 553 (holding that a disallowance was not "attributable to" a valuation misstatement when the I.R.S. disallowed a transaction as lacking economic substance). In *Todd*, the Fifth Circuit held that, because deductions and credits were disallowed for a reason totally unrelated to any valuation overstatement, the resulting underpayment could not be "attributable to a valuation overstatement" and misstatement penalties should not apply. *Todd,* 862 F.2d at 542.

In *Heasley,* the Fifth Circuit determined:

> Whenever the I.R.S. totally disallows a deduction or credit, the I.R.S. may not penalize the taxpayer for a valuation overstatement included in that deduction or credit. In such a case, the underpayment is not attributable to a valuation overstatement. Instead, it is attributable to claiming an improper deduction or credit.

*Heasley,* 902 F.2d at 383. The Fifth Circuit has reaffirmed the validity of the *Todd/Heasley* reasoning. *See Weiner v. U.S.,* 389 F.3d 152, 160-62 (5th Cir. 2004) (citing *Todd/Heasley* with approval); *see also Southgate Master Fund, LLC ex rel. Montgomery Capital LLC v. United States*, 651 F.Supp. 2d 596, 664 (N.D. Tex. 2009) (noting that the Fifth Circuit reaffirmed the validity of

4

*Todd/Heasley* in the 2004 opinion in *Weiner*).

Here, the Court must take into account the I.R.S.'s rationale for disallowing the transactions entered into by Plaintiffs. First and foremost, the transaction is not disallowed because of a substantial valuation misstatement. The I.R.S. determined that the transaction was created for no business purpose other than for tax avoidance. Accordingly, the I.R.S. disregards the partnerships and transactions in full. The I.R.S. goes on to hold that the transaction lacked economic substance and was an economic sham. All losses are not allowed. All increase in basis of assets are not allowed to eliminate gain, and increases to the adjusted basis of partnership interests are not allowed. In essence, the I.R.S. rips the whole transaction apart.

But, there is no finding in the explanation of benefits that the reason for doing so is because of a gross valuation misstatement. In fact, in its explanation of Accuracy - Related Penalties, the I.R.S. once again states that the tax shelter was created without substantial authority for the position taken and that there was no reasonable belief by the partners that the position taken was more likely than not the correct treatment of the shelter and related transactions.

The I.R.S. then "hedges its bet", noting that, in addition, all *underpayments of tax* are due to, at a minimum, substantial understatements of income tax, gross valuation misstatement(s); or negligence or disregarded rules or regulations.

The United States argues that the earlier Fifth Circuit cases noted above dealt with shelters from the 1980s involving penalty provisions that are no longer in effect. However, the Fifth Circuit's decision in *Weiner* forecloses this argument. *See Weiner*, 389 F.3d at 161. Further, the

United States's argument that Treas. Reg. Section 1.6662-5(g) mandates a finding that, when the basis is determined to be zero, the deemed valuation misstatement is considered to be a gross valuation statement is vain. As Plaintiffs point out, this section is only applicable when any portion of the underpayment *is attributable* to a substantial valuation misstatement. *See* Treas. Reg., Section 1.6662-5(a).

Are *Todd, Heasley* and *Weiner* distinguishable? Although the degree of sophistication or motivation on the part of the taxpayers in the above cases might generate a more sympathetic treatment, the principle relied upon by Plaintiffs and cited above does not appear to hinge on the motives of the taxpayers, but rather how the United States treats the transaction. Therefore, although the United States invites this Court to ignore binding precedent, the Court will not and cannot do so. Any distinctions that might exist as to taxpayer motives, if such exist, are a matter of concern for the Fifth Circuit. Any attempt by the United States to establish a 40% penalty is foreclosed by its own actions in this case.

**SO ORDERED.**

**SIGNED this 9th day of March, 2010.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE